United States Court of Appeals,

Fifth Circuit.

No. 95-11017.

Eunice SCHWEITZER, Plaintiff-Appellee,

v.

ADVANCED TELEMARKETING CORPORATION, Advanced Telemarketing of
Texas Corporation and NRP, Inc., Defendants-Appellants.

Jan. 31, 1997.

Appeal from the United States District Court for the Northern
District of Texas.

Before JONES, DUHÉ and EMILIO M. GARZA, Circuit Judges.

DUHÉ, Circuit Judge:

Edith Schweitzer sued Appellants Advanced Telemarketing
Corporation ("ATC") and NRP, Inc. ("NRP") under the Age
Discrimination in Employment Act ("ADEA"). The district court
entered judgment on a jury verdict in Ms. Schweitzer's favor and
denied the defendants' motions for judgment as a matter of law or,
in the alternative, for a new trial. ATC and NRP appeal, alleging
Ms. Schweitzer produced insufficient evidence to show either age
discrimination or that ATC and NRP constitute a single employer,
and that the district court made evidentiary errors and incorrectly
charged the jury. We hold the district court erroneously
instructed the jury, and reverse the judgment and remand for a new
trial.

I. Background

ATC, a subsidiary of NRP, provides clients with telemarketing
services of two types. Outbound service is sales oriented, with

1

employees making calls to solicit orders. Inbound service focuses on employees answering calls to take orders or provide customer service. Clients contract with ATC to provide the desired service. ATC's need for employees is contingent on clients' demand for telemarketing, and may fluctuate greatly.

ATC has no written, uniform policy for workforce reduction, allowing its different departments to independently decide how to carry out reductions in force. The outbound department uses performance evaluations of employees' work to choose whom to retain, while the inbound department relies on employee seniority. Appellee Eunice Schweitzer began working at ATC in 1985 as a sales representative, and eventually reached the rank of senior supervisor. In the summer of 1992, the department she worked in was reduced, and Ms. Schweitzer was transferred to the GTE Customer Service Department as a supervisor.

The GTE Department was an inbound department responsible for taking orders for GTE services and responding to GTE customers who called in with problems. In August and September of 1992, the GTE Customer Service Department chose to reduce its work force because of a significant reduction in call volume. To effectuate the lay off, the department retained those employees with greater seniority, and laid off employees with less. Ms. Schweitzer was one of those employees laid off in September 1992. She sued NRP and ATC alleging age discrimination under 29 U.S.C. § 621 et seq.

NRP moved for summary judgment, arguing it could not as a matter of law be considered a single entity with ATC, and thus an

employer of Ms. Schweitzer. The district court denied both this motion and a subsequent motion for summary judgment by all defendants that Ms. Schweitzer could not prevail on a claim of age discrimination.

At trial, the court instructed the jury on determining when two separate entities might be considered a single employer. The defendants objected to portions of the charge. The jury returned a verdict in favor of Ms. Schweitzer, finding that ATC violated the ADEA by discriminating against Ms. Schweitzer because of her age, that ATC did so knowingly and recklessly, and that ATC and NRP were a single employer of Ms. Schweitzer.

Evidence revealed that: the three members of the ATC Board of Directors all sat on the NRP board, NRP had a 99.5% share of ATC stock, NRP guaranteed ATC's line of credit, and ATC had a negative net worth until it achieved a positive cash balance in 1994. Testimony also showed, however, that NRP provided no human resource functions or policy direction to ATC and had no operational involvement with ATC. ATC employees were solely responsible for decisions regarding the hiring, firing or reduction in force of personnel at ATC. Indeed, the vice president of ATC testified NRP was unlikely to know when ATC was forced to reduce staff, and was never involved in making such decisions involving personnel.

## II. Jury Instruction

ATC and NRP assert the district court erred in instructing the jury on the circumstances in which NRP and ATC could be found to be a "single employer," so that NRP would be liable with ATC for ATC's

3

decision to lay off Ms. Schweitzer.

A. *Standard of Review*

We employ the standard of review discussed in *F.D.I.C. v. Mijalis,* 15 F.3d 1314 (5th Cir.1994):

> First, the challenger must demonstrate that the charge as a whole creates "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case.

*Id.* at 1318, *citing Bender v. Brumley,* 1 F.3d 271, 276 (5th Cir.1993) (citations omitted). If the party complaining of an incorrect jury instruction on appeal proposed another instruction to the district court, their proposed instruction must have correctly stated the law. *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1216 (5th Cir.1995). In short, the critical issues are whether it was correct to instruct the jury with the objected to instructions and, if incorrect, was the error harmless? *Bender,* 1 F.3d at 277.

B. *The "Single Employer" Test*

In civil rights actions, "superficially distinct entities may be exposed to liability upon a finding they represent a single, integrated enterprise: a single employer." *Trevino v. Celanese Corp.,* 701 F.2d 397, 404 (5th Cir.1983). *Trevino* set out a four part formula to determine when a parent corporation should be considered the employer of a subsidiary's employee. The formula focuses on *actual control* of employees by the parent company. The *Trevino* test has been used repeatedly in both this circuit and

4

others to ascertain when distinct entities may be considered integrated as a single employer. *Garcia v. Elf Atochem North America,* 28 F.3d 446, 450 (5th Cir.1994); *Chaiffetz v. Robertson Research Holding, Ltd.,* 798 F.2d 731, 735 (5th Cir.1986).

*Trevino* 's four part test considers (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Trevino,* 701 F.2d at 404. The second of these factors has traditionally been most important, with courts refining their analysis to the single question, "What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Id., quoting Odriozola v. Superior Cosmetic Distribs., Inc.,* 531 F.Supp. 1070, 1076 (D.P.R.1982); *Chaiffetz,* 798 F.2d at 735.

Other Fifth Circuit cases have utilized a "hybrid economic realities/common law control test" to resolve when companies will be considered single employers in ADEA suits. *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292, 296 (5th Cir.1994), *Deal v. State Farm County Mut. Ins. Co. of Texas,* 5 F.3d 117, 118 (5th Cir.1993). The hybrid test was first used in the context of determining if a worker employed as an independent contractor should be considered the employee of an entity for the purposes of Title VII. *Mares v. Marsh,* 777 F.2d 1066 (5th Cir.1985). It was then extended to ADEA cases in *Fields v. Hallsville Independent School District,* 906 F.2d 1017 (5th Cir.1990).

While the hybrid test has been used to resolve single employer

5

disputes in ADEA cases, *Trevino* was the original test used in this circuit to determine if separate, related business entities could together be considered the employer of a civil rights plaintiff. The hybrid test developed as a means of determining when plaintiffs could be considered employees of business entities, not to ascertain if different entities were so integrated as to constitute a single employer of that plaintiff.

*Trevino* and the hybrid test are very similar, since under the hybrid test, "the right to control an employee's conduct is the most important component...."[1]  *Deal,* 5 F.3d at 118.  However, we hold that while the *Trevino* and hybrid tests are similar, and will frequently yield the same results, the tests should not be used interchangeably.  Rather, the hybrid test should be used as an initial inquiry to resolve, if need be, whether a plaintiff is an employee of the defendant (or one of the defendants, in a multi defendant case) for the purposes of Title VII.[2]  If the plaintiff is found to be an employee of one of the defendants under the

---

[1]The *Deal* court gave the details of the hybrid test:

> When examining the control component, we have focused on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule.  The economic realities component of out test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

*Deal,* 5 F.3d at 119 (citations omitted).

[2]Such an inquiry would be necessary, for example, to determine whether an independent contractor has a sufficiently close relationship to a defendant that the defendant should be liable to the contractor for its conduct.

6

hybrid test, but questions remain whether a second (or additional) defendant is sufficiently connected to the employer-defendant so as to be considered a single employer, a *Trevino* analysis should be conducted. The *Trevino* analysis will establish if the second or additional defendant is also an employer of the plaintiff.

Since neither ATC nor NRP disputed that Ms. Schweitzer was an employee of ATC for the purposes of the ADEA, there was no need for the district court to instruct on the hybrid test. In this case, the *Trevino* test was the proper analysis to determine if ATC and NRP were a single employer.

C. *The District Court's Instruction*

The district court defined "employer" under the ADEA for the jury, informing them what they needed to find for ATC and NRP to represent a single employer. Appellants ATC and NRP proposed an instruction based on the *Trevino* test, requesting the court to instruct the jury:

> An employer is one who directs work assignments and determines the hours, means and manner of performance of work. Separate corporate entities may be treated as a single employer when they are interrelated in matters relating to employment or share centralized control of labor relations. The critical question is the following: what entity made the final decisions regarding employment matters related to the person claiming discrimination?

The district court rejected this proposed charge and instead gave the jury the following instruction:

> You are instructed that ATC was the employer of the Plaintiff. Plaintiff contends that ATC and NRP, Inc. should be treated as a single employer. Under some circumstances, separate corporate entities may be treated as a single employer. They may be treated as a single employer where disregard of the corporate form is necessary to prevent fraud, illegality, or injustice, or where recognition of the separate corporate

7

entity would defeat public policy.  Among the factors which you may consider in determining whether ATC and NRP should be treated as a single employer of the Plaintiff are the following:

1. The interrelation of operations;

2. Common officers and directors;

3. Centralized control of labor relations;

4. Common ownership or financial control of the employer and the corporation;

5. Financing of a subsidiary corporation by the parent corporation;

6. The subsidiary corporation's inadequate capitalization.

Your determination of whether the two corporations are a single employer should not be based upon any single factor.  For you to find that ATC and NRP were a single employer, you must determine that there was such domination of the finances, policies, and practices of ATC by NRP, that ATC had no separate mind, will, or existence of its own and is but a business conduit of NRP.  The mere ownership of substantially all of the stock of ATC by NRP is not sufficient to establish such liability.

D. *Analysis*

The district court erred in not following the *Trevino* test to determine single employer status.  The district court's instruction did not focus on control of labor relations but instead on a multitude of other factors.  None of the four *Trevino* factors concentrates on common financing, capitalization, or officers. *Trevino* instructs us to focus on the control a parent company exercises over the employment decisions of its subsidiary.

As well, the district court's charge was far too broad.  Since it allowed the jury to pick and choose from various components of different tests to make its determination, the jury made a skewed

8

finding that NRP and ATC were a single employer. Evidence irrelevant to single employer status, such as stock control and common financing, became important. Evidence that was central to finding a single employer relationship, namely involvement in the daily employment decisions of ATC, was disregarded in favor of this unimportant information.

Since we agree with Appellants' contention the jury instruction was incorrect and reverse on those grounds, we do not address the remaining arguments.

Judgment is REVERSED, and the case is REMANDED for a new trial.