TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00149-CV






Patricia Sullivan and Dannah Broughton, Appellants



v.



Texas Department of Criminal Justice, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 97-02945, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING 







 Patricia Sullivan and Dannah Broughton appeal from the summary judgment
rendered in favor of appellee Texas Department of Criminal Justice ("the Department") in
Sullivan and Broughton's age discrimination suit. See Texas Commission on Human Rights Act 
("the Act"), Tex. Lab. Code Ann. §§ 21.001-.306 (West 1996 & Supp. 2000) ("Labor Code"). 
We will affirm the district-court judgment.


Factual and Procedural Background



 Sullivan and Broughton served as adult probation officers for the Hardin County
Community Supervision and Corrections Department (HCCSCD). The district judge or judges
trying criminal cases in each judicial district must establish a community supervision and
corrections department, formerly known as an adult probation department, whose charge is to
conduct presentence investigations of criminal defendants, supervise and rehabilitate defendants
placed on community supervision, enforce the conditions of community supervision, and staff
community corrections facilities. See Tex. Gov't Code Ann. §§ 76.001-.017 (West 1998 & Supp.
2000) ("Gov't Code"). (1) The Community Justice Assistance Division, a department of the Texas
Department of Criminal Justice, is under a statutory mandate to establish minimum standards for
programs, facilities and services provided by these community supervision and corrections
departments and to fund programs, facilities, and services for them. The Community Justice
Assistance Division is also responsible for inspecting and auditing these local departments. See
Gov't Code §§ 509.001-.012.

 The Department audited HCCSCD and found several problems, including
HCCSCD's reporting and receiving state payments for completing presentence investigation
reports that were ineligible for state funding. At that point, on May 15, 1995, the Department
sent HCCSCD a letter stating that it was "imposing fiscal and management controls over
HCCSCD." HCCSCD had hired a new director, Cindy Cain, who began work May 18, 1995. 
On June 5, 1995, Sullivan, Broughton and Robert Phipps received letters from Cain advising them
that because of drastic cuts in state funding, she had to reduce the workforce. (2) Because they were
all over the age of forty, they concluded that their firing was due to age discrimination and sued
both HCCSCD and the Department. See Labor Code § 21.254.

 The Department moved for summary judgment on the basis that it was not plaintiff-appellants' employer. However, an entity that is not the plaintiff's nominal employer may be
liable for employment discrimination under the "single employer" theory. See Lusk v. Foxmeyere
Health Corp., 129 F.3d 773, 777 (5th Cir. 1997); Trevino v. Celanese Corp., 701 F.2d 397, 404
(5th Cir. 1983) (in civil rights actions, "superficially distinct entities may be exposed to liability
upon a finding they represent a single, integrated enterprise: a single employer."). The parties
stipulated that the only issue in the summary judgment underlying this appeal was whether the
Department was a "single employer" under Title VII at the time of Sullivan and Broughton's
termination. The district court granted the Department's motion for summary judgment and
severed that judgment, making it final for purposes of appeal. Appellants attack the summary
judgment in one issue, contending that they produced enough evidence to overcome the
Department's no-evidence summary-judgment motion. See Tex. R. Civ. P. 166a(i). We will
overrule the issue presented.


Discussion



Standard of Review


 This Court has recently addressed the standard for reviewing a summary judgment
that is based on paragraph (i) of Rule 166a:


A no-evidence summary judgment is essentially a pretrial directed verdict, and we
apply the same legal sufficiency standard in reviewing a no-evidence summary
judgment as we apply in reviewing a directed verdict. Like a directed verdict,
then, the task of the appellate court is to determine whether the plaintiff has
produced any evidence of probative force to raise fact issues on the material
questions presented. The appellate court must consider all of the evidence in the
light most favorable to the party against whom the no-evidence summary judgment
was rendered; every reasonable inference must be indulged in favor of the
nonmovant, and any doubts resolved in its favor. A no-evidence summary
judgment is properly granted if the nonmovant fails to bring forth more than a
scintilla of probative evidence to raise a genuine issue of material fact as to an
essential element of the nonmovant's claim on which the nonmovant would have
the burden of proof at trial. If the evidence supporting a finding rises to a level
that would enable reasonable, fair-minded persons to differ in their conclusions,
then more than a scintilla of evidence exists. Less than a scintilla of evidence
exists when the evidence is 'so weak as to do no more than create a mere surmise
or suspicion' of a fact, and the legal effect is that there is no evidence.



Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70-71 (Tex. App.--Austin 1998, no pet.) (citations
and internal quotation marks omitted); see also Hon. David Hittner & Lynne Liberato, Summary
Judgments in Texas, 34 Hous. L. Rev. 1303, 1356 (1998) (no-evidence summary judgment is
essentially pre-trial directed verdict).


Age Discrimination


 Discrimination based on age violates the Act. See Labor Code § 21.051. (3) The Act
is intended to carry out the policies of Title VII of the Civil Rights Act of 1964. See Labor Code
§ 21.001(1); Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 485 (Tex. 1991); Wal-Mart
Stores, Inc. v. Davis, 979 S.W.2d 30, 34 (Tex. App.--Austin 1998, pet. denied). One of the
purposes behind the Act is to correlate state law with federal law in the area of discrimination in
employment. See Schroeder, 813 S.W.2d at 485. Texas courts routinely rely for guidance on
federal court decisions addressing Title VII. See Specialty Retailers, Inc. v. DeMoranville, 933
S.W.2d 490, 492 (Tex. 1996); City of Austin v. Gifford, 824 S.W.2d 735, 739 (Tex. App.--Austin
1992, no writ).


Was the Department Sullivan and Broughton's Employer?


 As stipulated by the parties, the only issue before the district court was whether the
Department was appellants' employer under the "single employer" doctrine; that is, whether the
Department and HCCSCD represent a single, integrated enterprise. (4) The status of probation
officers and employees of these community supervision and corrections departments has been
described by one commentator as "murky." See 36 David B. Brooks, County and Special
District Law § 22.31, 111-12 (Texas Practice 1989). The statute creating these entities declares
that such officers "shall not be deemed state employees" except for purposes of workers'
compensation insurance coverage and state indemnification for certain acts. See Gov't Code §
76.006(e) (emphasis added). Several courts and the office of the attorney general have held them
to be officers and employees of the judicial districts they serve rather than employees of the
county. See Clark v. Tarrant County, Tex., 608 F. Supp 209, 211 (N.D. Tex. 1985) (holding that
probation department employees were not county employees), rev'd in part on other grounds, 798
F.2d 736, 739 (5th 1986); Shore v. Howard, 414 F. Supp. 379, 390 (N. D. Tex. 1976) (holding
that probation department employees were employees of the district judges); see also Op. Tex.
Att'y Gen. LA-97-090 (1997).

 Sullivan and Broughton nevertheless argue that the Department and HCCSCD are
a "single employer." A four-part formula has been applied to make this determination: (1)
interrelation of operations; (2) centralized control of labor relations; (3) common management;
and (4) common ownership or financial control. See Trevino, 701 F.2d at 404. The second of
these factors has traditionally been the most important, with courts refining their analysis to the
single question: "What entity made the final decisions regarding employment matters related to
the person claiming discrimination?" See id.; Schweitzer v. Advanced Telemarketing Corp., 104
F.3d 761, 764 (5th Cir. 1997).

 The Department argues in part that the "single employer" test may not be applied
to governmental units as a matter of law. See Trevino, 701 F.2d at 404 n.10, (citing Dumas v.
Town of Mt. Vernon, 612 F.2d 974, 979 n.9 (5th Cir. 1980) (standard not readily applicable to
governmental subdivisions)). We do not decide that broad issue. However, under the facts of this
case, we decline to apply the "single employer" doctrine to hold the Department liable as
appellants' employer. Although the authority of a court to suspend the imposition of a sentence
in a criminal case was expressly recognized by a 1935 amendment to the Texas Constitution,
probation departments (5) are completely a creation of statute. See Brooks, § 22.31 at 111. Section
76.006 expressly excludes the State (and by implication the Department as an agency of the State)
as the employer of community supervision and corrections department personnel except for certain
specific purposes. That the statute classifies employees of a community supervision and
corrections department as state employees for some purposes and excludes them for other
purposes shows their status as state employees was considered by the Legislature. We decline to
override the express statutory mandate that created these entities in order to deem the Department
to be Sullivan and Broughton's employer under the "single employer" doctrine, which was
developed in a different context. (6) We note that the community supervision and corrections
department employees are not excluded from the coverage of the Act; the State of Texas and its
agencies are simply not available to sue as their employer.

 Further, even were we to apply the "single employer" doctrine, we would reach
the same result. Appellants argue that the Department generally exercises a high degree of control
over the community supervision and corrections departments through its control over funding and
by setting standards for licensing probation officers and other statutory mandates. They argue
that, at the time of their firing, the Department's control over HCCSCD was even greater. 
Although appellants produced evidence that the degree of control exercised by the Department was
high during this time period (statements such as "imposing managerial control" in a letter and an
announcement at local governing board meeting that the Department has "taken over fiscal and
management operations"), appellants have produced no evidence of specific control over the
decision to fire them. For example, in Trevino, there was evidence that the parent company
managers and supervisors had, on numerous occasions, authorized the hiring, firing, transfers,
and layoffs of specific employees of the subsidiary company. See Trevino, 701 F.2d at 400; see
also Schweitzer, 104 F.3d at 765 (evidence of involvement in daily employment decisions central
to "single employer" relationship). Appellants presented no comparable evidence to show that
the Department was the entity making the final decision regarding employment matters. We
overrule appellants' sole issue presented.


Conclusion



 We conclude that the Department is not appellants' employer under the "single
employer" doctrine for purposes of the Act. (7) Having overruled the only issue presented, we
affirm the district-court judgment.



 



 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: February 3, 2000

Do Not Publish
1. The provisions governing community supervision and corrections departments were formerly
found in the Code of Criminal Procedure. See Act of April 25, 1995, 74th Leg., R.S., ch. 76,
§ 7.11, 1995 Tex. Gen. Laws 458, 580-84 (transferring the substance of article 42.131 of Code
of Criminal Procedure to Government Code); Act of April 25, 1995, 74th Leg., R.S., ch. 76,
§ 7.12, 1995 Tex. Gen. Laws 458, 584 (repealing article 42.131, Code of Criminal Procedure). 
Because the relevant substance of the provisions implicated in this appeal has not changed, the
Government Code is cited for convenience. See Tex. Att'y Gen. LA-97-090 (1997) (section
76.006 substantially the same in 1997 as 1977 enactment).
2. Robert Phipps non-suited his claims and was not a party to the judgment or this appeal. See
Tex. R. Civ. P. 162.
3. Age discrimination is part of one comprehensive act covering employment discrimination in
Texas, rather than being addressed in a separate act. See Age Discrimination in Employment Act
of 1967, 29 U.S.C. §§ 621-34 (1994).
4. Of course, the Department is a state agency and therefore, holding the Department to be
appellants' employer holds the State of Texas to be their employer.
5. Now called community supervision and corrections departments.
6. As noted in Trevino and Dumas, the "single employer" doctrine was developed by the
National Labor Relations Board to determine whether private corporations should be consolidated
for the purposes of applying the National Labor Relations Act. See Trevino, 701 F.2d at 404
n.10; Dumas, 612 F.2d at 979 n.9. 
7. Because of the parties' stipulation limiting the issue before the district court, we offer no
opinion on the potential applicability of NME Hospitals, Inc. v. Rennels, 994 S.W.2d 142 (Tex.
1999). In the context of considering the plaintiff's standing to sue one defendant, the court held
that the plaintiff and the potential defendant need not have a direct employment relationship. Id.
at 146. Instead, the plaintiff must show: the potential defendant is an employer within the
statutory definition of the Act, an employment relationship exists between plaintiff and a third
party, and the defendant controlled access to the plaintiff's employment opportunities and denied
or interfered with that access based on unlawful criteria. Id. at 147. The court overruled
Guerrero v. Refugio County, 946 S.W.2d 558 (Tex. App.--Corpus Christi 1997, no writ), to the
extent it holds an employment relationship must exist between plaintiff and defendant. Id. at 146-47.



ion and corrections departments through its control over funding and
by setting standards for licensing probation officers and other statutory mandates. They argue
that, at the time of their firing, the Department's control over HCCSCD was even greater. 
Although appellants produced evidence that the degree of control exercised by the Department was
high during this time period (statements such as "imposing managerial control" in a letter and an
announcement at local governing board meeting that the Department has "taken over fiscal and
management operations"), appellants have produced no evidence of specific control over the
decision to fire them. For example, in Trevino, there was evidence that the parent company
managers and supervisors had, on numerous occasions, authorized the hiring, firing, transfers,
and layoffs of specific employees of the subsidiary company. See Trevino, 701 F.2d at 400; see
also Schweitzer, 104 F.3d at 765 (evidence of involvement in daily employment decisions central
to "single employer" relationship). Appellants presented no comparable evidence to show that
the Department was the entity making the final decision regarding employment matters. We
overrule appellants' sole issue presented.


Conclusion



 We conclude that the Department is not appellants' employer under the "single
employer" doctrine for purposes of the Act. (7) Having overruled the only issue presented, we
affirm the district-court judgment.



 



 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: February 3, 2000

Do Not Publish
1. The provisions governing community supervision and corrections departments were formerly
found in the Code of Criminal Procedure. S