**Beth A. RHODES, M.D., Plaintiff,**

v.

**SUTTER HEALTH, a California Corporation, Sutter Gould Medical Foundation, a California Corporation, the Gould Medical Group, Inc., a California Corporation, Defendants.**

**No. CIV. 2:12–0013 WBS DAD.**

United States District Court,
E.D. California.

Feb. 1, 2013.

Stephen M. Murphy, Law Offices of Stephen M. Murphy, San Francisco, CA, for Plaintiff.

Benjamin J. Schnayerson, Carla J. Hartley, Dillingham & Murphy, LLP, Maiko Nakarai–Kanivas, Maureen E. McClain, Littler Mendelson, PC, San Francisco, CA, for Defendants.

## MEMORANDUM AND ORDER RE: MOTIONS FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT AND TO STRIKE

WILLIAM B. SHUBB, District Judge.

Plaintiff Beth A. Rhodes brought this action against Sutter Health, Sutter Gould Medical Foundation ("SGMF"), and The Gould Medical Group, Inc. ("GMG") alleging unlawful retaliation, constructive discharge, gender harassment, gender discrimination, failure to prevent discrimination, violation of California Business and Professions Code section 2056, defamation, and intentional infliction of emotional distress. Presently before the court is SGMF's motion for summary judgment or, alternatively, partial summary judgment, as to plaintiff's fourth through eleventh causes of action pursuant to Federal Rule of Civil Procedure 56. Also before the court is SGMF's motion to strike pursuant to Federal Rule of Civil Procedure 37.

## I. Factual and Procedural Background

█ SGMF is a nonprofit corporation that operates healthcare clinics and a clinical research department in California's Central Valley. (Sanders Decl. ¶¶ 2–3 (Docket No. 71).) California prohibits the corporate practice of medicine, which precludes SGMF from employing its own physicians to provide medical services to its patients.[1] (See Gordon Decl. Ex. B at 2 (Docket No. 73).) Therefore, pursuant to the structure set forth in California Health and Safety Code section 1206(1), SGMF contracts with GMG, a medical group, for the services of its physicians. (Sanders Decl. ¶¶ 3–4, 13.) Their relationship is governed by the terms of their Professional Services Agreement ("PSA"), which is usually renegotiated on an annual basis. (Id. ¶ 4.)

GMG enters into individual employment or independent contractor agreements with each physician. (Id. ¶ 5.) Plaintiff was employed by GMG as a radiologist specializing in breast and body imaging from January 2008 through May 2011. (First Am. Compl. ("FAC") ¶ 14 (Docket No. 30); McClain Decl. in Supp. of Summ. J. Ex. C ("Rhodes Dep.") at 20:1, 40:4–7 (Docket No. 78–2).) Plaintiff provided care to patients at SGMF's healthcare clinics in Modesto and Stockton. (FAC ¶¶ 14–15.)

On April 30, 2010, plaintiff attended a meeting with Dr. Paul Stadelman ("Dr. Stadelman"), Chairman of the Radiology Department, Melinda Knox, another GMG doctor, and Robrta Edge ("Edge"), the SGMF Director of Imaging. (Purtill Decl. Ex. B ("Rhodes Dep. II") at 189–90 (Docket No. 85:1–3), Ex. C ("Edge Dep.") at 201:22–202:21, 298:3–15 (Docket No. 86–1).) At the meeting, plaintiff and Dr. Knox discussed plaintiff's concerns about Dr. Knox's performance, but there was tension between them. (See Rhodes Dep. II at 189–90.) After the meeting, plaintiff

---

**1.** In California, " '[i]t is an established doctrine that a corporation may not engage in the practice of such professions as law, medicine or dentistry.' " Cal. Physicians' Serv. v. Aoki Diabetes Research Inst., 163 Cal.App.4th 1506, 1514, 78 Cal.Rptr.3d 646 (1st Dist.2008) (quoting People ex rel. State Bd. of Med. Examiners v. Pac. Health Corp., 12 Cal.2d 156, 158, 82 P.2d 429 (1938)). This "restriction on the corporate practice of medicine finds statutory expression in California, where the practice of medicine without a license is prohibited and corporations have 'no professional rights, privileges or power.' " Id. (quoting Bus. & Prof. Code § 2400).

received a letter from Dr. Stadelman stating that she had acted unprofessionally and that any further "unprofessional behavior" would "be grounds for [her] immediate termination." (Purtill Decl. Ex. S; *see also* Rhodes Dep. II at 63:14–16.)

Following that meeting, several incidents involving plaintiff and SGMF staff occurred.[2] First, a nurse eavesdropped on plaintiff and a patient and the nurse was reprimanded for that action. (Edge Dep. 298:3–15; Ex. 53 to Edge Dep. at Sealed 28–30 (Docket No. 82).) Second, another nurse, Kathy Davis ("Davis"), harmed an eighty-five-year-old patient, Sara Grantski, by disobeying plaintiff's standing order to hold pressure at Grantski's breast biopsy site for fifteen minutes and thereby causing her to develop a painful hematoma. (Rhodes Decl. ¶¶ 2–3.) Davis also changed the pain score that Grantski had reported from "zero" to "one." (*Id.* ¶ 2.)

Third, a technician, Carolyn Plante, performed a "Crown–Rump Length Measurement" incorrectly. (*Id.* ¶ 6.) When plaintiff confronted her about it, Plante said, " 'That's the way we measure it here. Why don't you ask a radiologist?' " (*Id.*) Plaintiff believes Plante and Davis did these things so that plaintiff would have an inappropriate outburst in response and be fired. (*Id.* ¶¶ 2, 6.) As a result of these incidents, plaintiff felt anger, outrage, anxiety, and humiliation. (*Id.* ¶¶ 2, 7.) She internalized those feelings and believes that they were a substantial factor in causing her to go on medical disability on or about December 16, 2010. (*Id.* ¶¶ 4, 8.)

Plaintiff brings claims against three defendants: GMG, SGMF, and Sutter Health. Plaintiff's FAC contains claims for (1) retaliation in violation of the federal False Claims Act, (2) retaliation in viola-

tion of the California False Claims Act, (3) violation of California Business and Professions Code section 2056, (4) gender harassment in violation of the California Fair Employment and Housing Act ("FEHA"), (5) sex discrimination in violation of FEHA, (6) retaliation for reporting patient abuse in violation of FEHA, (7) retaliation in violation of FEHA, (8) failure to prevent discrimination in violation of FEHA, (9) constructive discharge in violation of public policy, (10) defamation, and (11) intentional infliction of emotional distress. (Docket No. 30.)

On May 22, 2012, 2012 WL 1868697, the court dismissed all of plaintiff's claims against Sutter Health and plaintiff's first through third claims against SGMF. (Docket No. 51.) The parties then stipulated to dismiss claim six with prejudice as to all defendants. (Docket No. 37.) SGMF now moves for summary judgment on claims four through eleven and contends that plaintiff is not entitled to punitive damages. (Docket No. 68.)

## II. *Request for Judicial Notice*

■ SGMF requests that the court take judicial notice of the legislative history of Assembly Bill 2279, Chapter 133, Statutes of 1980, which amended California Health and Safety Code section 1206. (Req. for Judicial Notice ("RJN") Ex. A (Docket No. 79).) Under Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of the legislative history of state statutes. *See Chaker v. Crogan,* 428 F.3d 1215, 1223 (9th Cir.2005) (taking judicial notice of legislative history of California statute); *Louie v. McCormick & Schmick Rest. Corp.,* 460 F.Supp.2d 1153, 1155 n. 4 (C.D.Cal.2006) (same). Accord-

---

**2.** The court recounts these events in the light most favorable to plaintiff. *Orr v. Bank of Am., NT & SA,* 285 F.3d 764, 772 (9th Cir. 2002). SGMF vigorously contests plaintiff's

version of these events and objects to the evidence used to support her contentions. SGMF's evidentiary objections are addressed below.

ingly, the court takes judicial notice of the legislative history of Assembly Bill 2279, Chapter 133, Statutes of 1980.

### III. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[3] A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. *Id.*

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255, 106 S.Ct. 2505. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... ruling on a motion for summary judgment...." *Id.*

### IV. Claims Four Through Nine

■ SGMF requests summary judgment on five claims (excluding claim 6, which has been dismissed) that require plaintiff to demonstrate either an employment relationship or an alternate basis for liability. Claims four through eight are all brought under FEHA, "which predicates potential ... liability on the status of the defendant as an 'employer.'" *Kelly v. Methodist Hosp. of S. Cal.*, 22 Cal.4th 1108, 1116, 95 Cal.Rptr.2d 514, 997 P.2d 1169 (2000) (quoting Cal. Gov't Code § 12926). Claim nine is a claim for wrongful termination in violation of public policy, and "only an employer can be liable for the tort of wrongful discharge." *Khajavi v. Feather River Anesthesia Med. Grp.*, 84 Cal.App.4th 32, 38, 100 Cal.Rptr.2d 627 (3d Dist.2000).

Plaintiff alleges in her FAC and has repeatedly stated under oath that only GMG was her employer. (*See, e.g.,* FAC § 14 (Docket No. 30); Rhodes Dep. at 19:24–20:4, 30:7–21, 31:1–11.) She gave no indication that she intended to argue that SGMF is her joint employer until her opposition to SGMF's motion for summary judgment repeatedly used the term and

---

**3.** Federal Rule of Civil Procedure 56 was revised and rearranged effective December 1, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

referred to the integrated enterprise test as one to determine joint employment. The integrated enterprise test, however, determines whether two separate corporate entities should be considered a *single* employer. At oral argument, plaintiff's counsel nevertheless asserted that plaintiff is indeed arguing that SGMF was her joint employer. Accordingly, the court considers both whether SGMF was plaintiff's joint employer and whether SGMF and GMG constitute plaintiff's single employer under the integrated enterprise test.

### A. Joint Employer Test

■ In determining whether a defendant is a joint employer under the FEHA, courts consider the totality of the circumstances bearing on the nature of the work relationship of the parties, with an emphasis on the extent to which the defendant controls the plaintiff's performance of employment duties. *Hall v. Apartment Inv. & Mgmt. Co.*, Civ. No. 08–03447, 2011 WL 940185, at *5 (N.D.Cal. Feb. 18, 2011); *Vernon v. State*, 116 Cal.App.4th 114, 124, 10 Cal.Rptr.3d 121 (1st Dist.2004). Factors to be taken into account include:

> [P]ayment of salary or other employment benefits and Social Security taxes, the ownership of the equipment necessary to performance of the job, the location where the work is performed, the obligation of the defendant to train the employee, the authority of the defendant to hire, transfer, promote, discipline or discharge the employee, the authority to establish work schedules and assignments, the defendant's discretion to determine the amount of compensation earned by the employee, the skill re-

quired of the work performed and the extent to which it is done under the direction of a supervisor, whether the at work is part of the defendant's regular business operations, the skill required in the particular occupation, the duration of the relationship of the parties, and the duration of the plaintiff's employment. *Vernon*, 116 Cal.App.4th at 125, 10 Cal. Rptr.3d 121.

■ " 'Of these factors, the extent of the defendant's right to control the means and manner of the workers' performance is the most important.' " *Vernon*, 116 Cal. App.4th at 126, 10 Cal.Rptr.3d 121 (quoting *Lee v. Mobile Cnty. Comm'n*, 954 F.Supp. 1540, 1546 (S.D.Ala.1995)). " 'A finding of the right to control employment requires ... a comprehensive and immediate level of "day-to-day" authority over employment decisions.' " *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682 (9th Cir.2009) (quoting *Vernon*, 116 Cal.App.4th at 127–28, 10 Cal.Rptr.3d 121).

■ Here, it is undisputed that GMG paid plaintiff's salary. (*See* Pl.'s Stmt. of Genuine Issues & Disputed Facts at 14 (Docket No. 89); *see also* McClain Decl. in Supp. of Summ. J. Exs. G at 216 (employment contract between GMG and plaintiff, setting plaintiff's salary), K (payroll stub), O, P, Q, R (Docket Nos. 78–4, 78–5).) Although this factor is not dispositive, it "is at least strong evidence that an employment relationship did not exist." *Vernon*, 116 Cal.App.4th at 126, 10 Cal. Rptr.3d 121. Plaintiff does not contend that SGMF "hired [plaintiff], set h[er] compensation, or maintained any personnel records for [her]."[4] *Id.* at 127, 10

---

4. In a letter to Medicare, SGMF represented that plaintiff was its employee and that it would be billing for plaintiff under its tax I.D. number. (Purtill Decl. Ex. BB (Not docketed).) However, plaintiff does not dispute that GMG determined which benefits plaintiff would receive. (*See* Pl.'s Stmt. of Genuine

Issues & Disputed Facts at 15.) That SGMF facilitated plaintiff's enrollment in Medicare does not alter the court's conclusion that SGMF was not plaintiff's joint employer.

Plaintiff also states that SGMF represented that she was an employee of SGMF to the Department of Health Care Services and Me-

Cal.Rptr.3d 121. Rather, it is undisputed that GMG determined the amount of plaintiff's compensation, as well as the benefits she would receive, and hired her. (Pl.'s Stmt. of Genuine Issues & Disputed Facts at 13–15.)

Except for the fact that SGMF owns the location where plaintiff works, none of the other facts pointed to by plaintiff provide indicia that SGMF exercised an "immediate level of 'day-to-day' authority," *Vernon,* 116 Cal.App.4th at 128, 10 Cal.Rptr.3d 121, so as to create an employment relationship between it and plaintiff. It is undisputed that Dr. Stadelman, a GMG employee, gave plaintiff her work assignments. (Pl.'s Stmt. of Genuine Issues & Disputed Facts at 13–15.) Moreover, as a physician, plaintiff practiced under her own license and did not have a supervisor. (Rhodes Dep. 54:19–55:10.) She also has the authority to make independent, as well as final, decisions regarding patient care. (Sanders Decl. ¶¶ 6,10,12; *id.* Ex. 2 Art. 1.1(a), 2.12, 9.1 (Docket No. 81).) In contrast, GMG physicians may supervise SGMF employees and require their removal from foundation sites. (Purtill Decl. Ex. G at 238:20–239:9.)

SGMF also "had no apparent authority or discretion to discipline, promote, transfer, or terminate" plaintiff. *Id.* The disciplinary warning plaintiff received was from Dr. Stadelman. (Rhodes Dep. 63:10–65:8.) At most, one SGMF staff member provided evaluations, at the request of GMG, of plaintiff's performance on such issues as timeliness and her demeanor with patients and staff. (*See* Purtill Decl. Exs. M, O (Docket Nos. 87–3, 87–4.)) Plaintiff points to the fact that Edge reviewed documents relating to incidents between plaintiff and other staff, but this was at the request of Dr. Steven Mitnik, the Medical Director of GMG. (Edge Dep. 291:15; Sanders Decl. ¶ 6.) She also suggests that Edge "was part of the 'leadership' team responsible for the sham investigation to develop cause to terminate plaintiff." (Pl.'s Stmt. of Genuine Issues & Disputed Facts at 5; *see, e.g.,* Purtill Decl. Ex. R (records of interviews with SGMF staff regarding GMG physicians) (Docket No. 87–4).) Edge assisted with interviewing her staff to determine if they had any problems with GMG doctors, however, because Dr. Mitnick again requested that she do so. (Edge Dep. 157:19–25.) Plaintiff's harassment and gender discrimination complaints were also conducted as a "joint investigation" by GMG and SGMF. (Purtill Decl. Ex. F at 27:15–17, 108:22–23 (Docket No. 86–4).) Evidence that an employer provided assistance with discrimination complaints and even supported such departments as benefits, diversity, and labor relations for another employer, however, is insufficient to find that it exercised day-to-day control over another employer's employment decisions in general or exercised any control with respect to plaintiff. *Ruiz v. Sysco Corp.,* Civ. No. 09–1824–H MDD, 2011 WL 3300098, at *4 (S.D.Cal. July 29, 2011) (applying integrated enterprise theory).

The only other factor that might even suggest that SGMF had control over the manner and means of plaintiff's performance of her job is the SGMF–GMG joint operating policies. Plaintiff was especially concerned with SGMF's policy that patients be scheduled for a surgical consult prior to any needle biopsy of the breast. (Purtill Decl. Ex. N (Docket No. 87–3).)

---

morial Hospital. (*See* Purtill Decl. Exs. Z (Not docketed), CC (Docket No. 88–1).) The court has reviewed these documents, however, and they do not identify plaintiff as an employee. Likewise, Dr. Mitnik is not identified as the authorized agent of SGMF for the "NDNP Query" for plaintiff, but rather is identified as an "authorized submitter." (*See* Ex. 157 to Mitnik Dep. at Sealed 60–62 (Docket No. 82).)

In the case of that policy, however, it was developed by GMG doctors and approved by Dr. Stadelman, the Chair of Imaging Services. (McClain Decl. in Supp. of Reply Ex. F at 14:25–15:23, G at 237:13–239:8 (Docket No. 97).) While the policy was in name SGMF"s, it was just as much GMG's policy. The other policies that plaintiff points to were also joint operating policies, such as these for "Patients['] Rights and Responsibilities and Medical Ethics" and "Zero Tolerance and the Prevention of Workplace Violence." (Purtill Decl. Exs. J.K.) These joint policies do not show that SGMF exerted control over GMG to require GMG employees to follow its own policies, but rather that the two entities, which work together to provide patient care, jointly created policies that would apply to the employees of each. *Cf. Hall,* 2011 WL 940185, at *7 (inquiring whether plaintiff was subject to alleged joint employer's independent personnel policies). Ultimately, SGMF did not assert "significant" control over plaintiff such that would " 'justify the belief on the part of an aggrieved employee that the [alleged co-employer] is jointly responsible for the acts of the immediate employer.' " *Hall,* 2011 WL 940185, at *6 (quoting *Vernon,* 116 Cal.App.4th at 126, 10 Cal.Rptr.3d 121).[5]

B. *Applicability of the Integrated Enterprise Test to Claims Under the FEHA and Claims for Wrongful Termination*

■ Under the integrated enterprise test, a parent and subsidiary may be considered a single employer. *Morgan v. Safeway Stores, Inc.,* 884 F.2d 1211,

1213 (9th Cir.1989). When applying the test, courts consider four factors: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. *Kang v. U. Lim Am., Inc.,* 296 F.3d 810, 815 (9th Cir.2002); *Laird v. Capital Cities/ABC, Inc.,* 68 Cal.App.4th 727, 737, 80 Cal. Rptr.2d 454 (3rd Dist.1998). The test was originally developed by the National Labor Relations Board ("NLRB") to determine whether it may decide a particular labor dispute. *Nesbit v. Gears Unlimited, Inc.,* 347 F.3d 72, 85 (3d Cir. 2003). It is useful for that purpose because, "[i]f the work forces of two affiliated corporations are integrated, there is an argument for a single bargaining unit covering both of them, and also an argument that they should be combined for purposes of determining whether the effect on commerce is substantial enough to justify the Board in asserting jurisdiction." *Papa v. Katy Indus., Inc.,* 166 F.3d 937, 942 (7th Cir.1999).

Some federal courts have adopted the integrated enterprise test to determine whether separate corporate entities are a single employer for purposes of liability under statutes prohibiting discrimination, including Title VII. *See, e.g., Sandoval v. Am. Bldg. Maint. Indus., Inc.,* 578 F.3d 787, 796 (8th Cir.2009) ("[T]he traditional four-factor standard is the means by which plaintiffs demonstrate corporate dominance over a subsidiary's operations and establish affiliate liability."); *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1241 (2d Cir.1995) ("We believe that the

---

5. The other facts offered by plaintiff to show that SGMF was plaintiff's joint employer are not probative of whether SGMF exercised substantial control over the manner and means of plaintiff's performance of her job, including: (1) GMG members sometimes identified themselves as SGMF employees and/or identified plaintiff as an

"SGMF/GMG" employee; (2) the Physician Recruitment Director who recruited plaintiff held herself out as an employee of SGMF/ GMG; (3) plaintiff's treating orthopedist identified her as a radiologist at SGMF/GMG; and (4) SGMF letterhead was used by GMG doctors in communications with plaintiff.

appropriate test under Title VII for determining when parent companies may be considered employers of a subsidiary's employees is the four-part [NLRB] test adopted by the Fifth, Sixth, and Eighth circuits."). California courts have applied the integrated enterprise test in FEHA and wrongful termination cases for the same purpose. *See, e.g., Laird,* 68 Cal. App.4th at 737–38, 80 Cal.Rptr.2d 454 (applying test to claims arising under FEHA and a claim for wrongful termination).

The Ninth Circuit, however, uses the test for a more limited purpose. Under its formulation, "[a] plaintiff with an otherwise cognizable Title VII claim against an employer with less than 15 employees may assert that the employer is so interconnected with another employer that the two form an integrated enterprise, and that collectively this enterprise meets the 15–employee minimum standard [necessary to hold an employer liable under Title VII]." *Anderson v. Pac. Mar. Ass'n,* 336 F.3d 924, 929 (9th Cir.2003). In other words, "[t]he test does not determine joint liability ..., but instead determines whether a defendant can meet the statutory criteria of an 'employer' for Title VII applicability." *Id.* at 928. If an employer meets the statutory minimum independently, the test is inapplicable. *Id.* at 929. Employed in this limited manner, the integrated employer test advances the anti-discrimination purpose behind Title VII by preventing employers from artificially dividing themselves into organizations with fewer than fifteen employees in order to escape liability. *E.E.O.C. v. Falls Vill. Ret. Cmty., Ltd.,* Civ. No. 5:05–1973, 2007 WL 756803, at *8 (N.D.Ohio Mar. 7, 2007).

Other courts have recognized the limitations of the test for determining liability in the discrimination context. In declining to apply the integrated enterprise to determine whether two entities should together be liable under Title VII, the Seventh Circuit explained that "[i]f the work forces of two affiliated corporations are integrated, ... there is no argument for making one affiliate liable for the other's independent decision to discriminate." *Papa,* 166 F.3d at 942. "The basic principle of affiliate liability is that an affiliate forfeits its limited liability only if it acts to forfeit it-as by ... configuring the corporate group to defeat statutory jurisdiction, or commanding the affiliate to violate the right of one of the affiliate's employees." *Id.* at 941. "The claim that a group of affiliated corporations is 'integrated,' the sort of claim that the four-factor test might be thought to support, not only is vague, but is unrelated to the act requirement ... or to the policy behind the exemption for employers that have very few employees." *Id.* at 942.

In *Laird,* the California Court of Appeal adopted the integrated enterprise test in a FEHA and wrongful termination case to determine whether a parent corporation could be liable for the acts of its subsidiary—the plaintiff's employer—as a single employer without discussion of statutory minimums or any act requirement. *See Laird,* 68 Cal.App.4th at 737, 80 Cal. Rptr.2d 454. Instead, it simply noted that, "[b]ecause California's Fair Employment and Housing Act has the same nature and purpose as the federal law, California courts frequently look to federal case law for guidance in interpreting the FEHA." *Id.* The *Laird* court articulated the test in a narrow fashion, framing it in terms of whether a corporate *parent* could be held liable for the acts of its *subsidiary.* Courts applying California law have generally followed suit, limiting the test's application to determining whether corporations having a parent-subsidy relationship are interrelated.[6] *See, e.g., Maddock v.*

---

**6.** Initially, the court notes that it may cite unpublished California appellate decisions as persuasive authority. *See Employers Ins. of*

KB Homes, Inc., 631 F.Supp.2d 1226, 1237–39 (C.D.Cal.2007); Kang, 296 F.3d at 815–16; Cellini v. Harcourt Brace & Co., 51 F.Supp.2d 1028, 1034–35 (S.D.Cal.1999); Hernandez v. AutoNation USA Corp., No. G030743, 2003 WL 22977576, at *8–9 (Cal. App.4th Dist. Dec. 19, 2003); Navarrete v. Telemundo Group, Inc., No. B142066, 2002 WL 1752821, at *7–8 (Cal.App.2d Dist. July 30, 2002).

Plaintiff does not contend that there is a parent-subsidiary relationship between SGMF and GMG. Instead, she asks that the court extend application of the integrated enterprise test to the relationship between SGMF and GMG, a nonprofit corporation and a medical group. (See Sanders Decl. ¶¶ 2–5.) SGMF's relationship with GMG is designed to comply with California Health and Safety Code section 1206(1), which provides multispeciality clinical groups (known as "foundations") an exemption to licensing requirements. (Id. ¶ 2; Gordon Decl. at 2–3.) While the non-profit may provide facilities or technical components of care, such as non-physician staff and equipment, under section 1206(1), it must form an arm's length relationship with physicians solely responsible for medical care because California prohibits the corporate practice of medicine.[7] (Gordon Decl. at 2–3.) To comply with section 1206(1), GMG's doctors provide medical services to SGMF pursuant to the PSA contract, (Sanders Decl. ¶¶ 4–5), which may be terminated by either party with or without cause, (id. ¶ 10). Plaintiff does not dispute that the relationship between SMGH and GMG is dictated by California law governing the practice of medicine and that their relationship is distinct from a parent-subsidiary relationship. (See Pl.'s Stmt. of Genuine Issues & Disputed Facts at 10–11.)

■ Plaintiff provides no rationale for extending the integrated enterprise test from affiliated corporations to two separate corporate entities that have merely a

Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n. 8 (9th Cir.2003). The court found several such unpublished cases that have not insisted on the parent-subsidiary relationship as a prerequisite for the test. They are distinguishable or unpersuasive, however. In Nelson v. Fog City Diner, Inc., No. A095951, 2002 WL 31259512 (Cal.App. 1st Dist. Oct. 9, 2002), the separate entities had common ownership. Nelson, 2002 WL 31259512, at *3; see id. at *11; see also Goldstein v. Hanson, No. G033321, 2005 WL 775421, at *1, *3–4 (Cal.App.4th Dist. Apr. 5, 2005) (applying integrated enterprise test to separate entities owned by the same person). In Martinucci v. S. Cal. Permanente Med. Grp., No. B215453, 2011 WL 1020043 (Cal.App.2d Dist. Mar. 23, 2011), the court applied the test to determine whether the entity that contracted for medical services from plaintiff's employer, a medical group, was a single employer. Martinucci, 2011 WL 1020043, at *17–18. The court, however, applied the test without any analysis of its applicability beyond a parent-subsidiary relationship. Id.

7. Plaintiff notes in the "Introduction" to her opposition "that she has raised a genuine issue of fact with regard to whether or not SGMF violated the [section 1206(1)] exemption [SGMF] base[s] [its] argument on (i.e., need a foundation because they cannot practice medicine)" because a policy she contested was a SGMF policy and because SGMF shredded the personal medical records of patients to prevent the fraud behind that policy from being revealed. (Opp'n at 1:13–25 (Docket No. 90).) The court addressed the SGMF policy as it relates to whether SGMF was plaintiff's joint employer above. Moreover, whether or not these assertions are well-founded or show that SGMF and GMG violated section 1206(1), SMGF and GMG's compliance with the statute does not bear on whether the court should extend the integrated enterprise test to entities operating under section 1206(1). The court construes this argument as plaintiff's identification of additional facts to suggest that because SGMF was engaging in actions that touch on the practice of medicine by GMG, the entities are interrelated under the integrated enterprise test.

contractual relationship. The court believes it would be an untenable notion for a corporate entity to face potential liability for another entity's discriminatory acts simply because the one contracted to provide services to the other. It would also be difficult to know where to draw the line amidst contractual relationships once this court extended the test beyond the parent-subsidiary relationship. As the court in *Miller v. Swiss Re Underwriters Agency, Inc.*, Civ. No. 09–09551, 2010 WL 935697 (C.D.Cal. Mar. 15, 2010), noted when considering plaintiff's request to apply the integrated enterprise test to a corporation that she alleged shared a common parent and management structure, use of the test for that broader purpose was "misplaced." See *Miller*, 2010 WL 935697 at *2–3 (applying the test anyway and noting that it "hinges on whether one entity exercises an unusual degree of *control* over another legally separate, but related entity").

 As explained above, the foundation model is intended to create an arm's length relationship between the nonprofit clinic and medical group practice because corporations cannot practice medicine. (Gordon Decl. at 3.) The policy behind imposing liability under the integrated enterprise test is the " 'fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship.' " *Bowoto v. Chevron Texaco Corp.*, 312 F.Supp.2d 1229, 1237–38 (N.D.Cal.2004) (quoting *Murray v. Miner*, 74 F.3d 402, 405 (2d Cir.1996)). Plaintiff does not dispute that the relationship between the parties is organized under that law, nor does she explain why the other tests used by California courts to determine liability under FEHA are insufficient to capture a situation in which the nonprofit group does not in fact have an arm's length relationship with a physicians' group and is actually operating as an employer of a physician. See *Bishop v. Wyndham Worldwide Corp.*,

Nos. A122517, A123449, 2011 WL 576571, at *33–34 (Cal.App. 1st Dist. Feb. 18, 2011) (alter ego, agency, equitable estoppel, "totality of the working relationship," and joint employer tests used in FEHA cases to determine an employer).

For this same reason, the court declines plaintiff's invitation to adopt a new test— what she fashions the "integral enterprise test"—to apply in the specific context of the foundation model. Plaintiff argues that SGMF and GMG not only operate jointly, but are dependent on each other to deliver health care. (Opp'n at 8.) She also notes the legislative history of California Health and Safety Code section 1206(1) explains that foundations operating under the aegis of that statute "should be treated like physicians' offices" and "function like group practices of physicians." (RJN at 7, 14; *see* Opp'n at 11.) That two entities interact to meet a common end—in this case the provision of healthcare—is not sufficient within itself to hold both liable for each's discriminatory acts when their relationship is merely contractual. Moreover, here there is no question that each employer, SGMF and GMG, is obligated to comply with FEHA for its own employees, as would a physician's office for its employees. Thus, there is no "back door to exempt the [foundations] from their [FEHA] obligations for violations of discrimination laws." (Opp'n at 8:24–25.) If an employee working for a foundation operating under section 1206(1) and facing adverse employment action believes he or she is jointly employed or another employer may be liable for adverse actions against her under a different theory, she may argue as much. Plaintiff did so here and, in addition, she has sought relief against SGMF employees that she believes contributed to her harm under state tort law.

█ Plaintiff's request also brings to the fore a fundamental tension in her position. As discussed above, California prohibits corporations from employing physicians to provide medical services. This ban extends even to nonprofit corporations because the danger of lay control attends all types of corporations. *See Cal. Physicians' Serv. v. Aoki Diabetes Research Inst.*, 163 Cal.App.4th 1506, 1516, 78 Cal.Rptr.3d 646 (1st Dist.2008) (noting that the ban protects patients). "The restriction is meant 'to protect the professional independence of physicians and to avoid the divided loyalty inherent in the relationship of a physician employee to a lay employer.'" *Id.* at 1514, 78 Cal. Rptr.3d 646 (quoting *Cal. Med. Ass'n, Inc. v. Regents of Univ. of Cal.*, 79 Cal.App.4th 542, 550, 94 Cal.Rptr.2d 194 (2d Dist. 2000)). By arguing that SGMF is her employer—under either the joint employer, integrated enterprise, or "integral enterprise" tests—plaintiff wants the benefit of potentially holding SGMF liable for her claims. But plaintiff cannot adopt this position without also suggesting that she was complicit in relinquishing her professional independence to lay control and compromising her loyalty to her patients. *See* Cal. Bus. & Prof. Code § 2264 (prohibiting "[t]he employing, directly or indirectly, the aiding, or the abetting of any unlicensed person ... to engage in the practice of medicine or any other mode of treating the sick or afflicted which requires a license to practice constitutes unprofessional conduct"). This court has not been presented with a compelling reason to let plaintiff receive the benefits of an employment relationship without accepting the consequences such employment entails. Furthermore, doing so would chip away at a legislatively built wall intended to allow nonprofit corporations to work with medical groups to deliver healthcare without relinquishing physician control to those corporations.

Moreover, as discussed above, the grounds for applying the integrated enterprise test to determine liability under employment discrimination statutes are infirm in the first place. The test was not created to determine whether an entity had control over a particular employee or directed any discrimination. There is also no indication that the reason the test was imported from Title VII into FEHA case law was to enable plaintiffs to meet the statutory minimums of FEHA. The *Laird* court adopted it explicitly to determine liability rather than coverage. *See* 68 Cal. App.4th at 737–41, 80 Cal.Rptr.2d 454. FEHA's statutory minimum is a mere five employees; this significantly lessens the concern that firms can organize themselves to avoid liability. *See* Cal. Gov't Code § 12926(d). There are no allegations here that SGMF and GMG are organized under section 1206(1) for such a purpose.

█ Finally, also cutting against extension of the test, is the presumption that separate corporate entities have distinct identities. *Laird,* 68 Cal.App.4th at 737, 80 Cal.Rptr.2d 454. As the *Laird* court noted in regard to a parent and subsidiary, plaintiffs bear a heavy burden under both California and federal law when they seek to rebut this presumption and hold multiple corporate entities liable as a single employer. *Id. A fortiori,* corporate entities that are unaffiliated and connected only through contract should not be joined as a single employer without a persuasive reason for doing so. This court discerns none. Without direction from California courts, the court is not inclined to extend the test outside of the parent-subsidiary relationship and does not do so. Accordingly, the court must grant SGMF's motion for summary judgment as to plaintiff's fourth through ninth claims (excluding claim six) for FEHA violations and wrongful termination.

## V. Claim Ten for Defamation

Plaintiff concedes that her claim for defamation should be dismissed with respect to SGMF. (Opp'n at 3:9–10.) Accordingly, the court will dismiss plaintiff's claim for defamation with prejudice as to SGMF.

## VI. Motion to Strike

■■ In support of her opposition to SGMF's motion for summary judgment, plaintiff submitted a declaration from Carol Frazier ("Frazier"). (Docket No. 93.) Plaintiff failed, however, to identify Frazier as a witness in her initial disclosures under Federal Rule of Civil Procedure 26. (Mot. to Strike at 2:4–5 (Docket No. 101).) SGMF moves to strike Frazier's declaration on this ground.

■■ Rule 26(a) requires parties to disclose the names and contact information of individuals "likely to have discoverable information" that the disclosing party may use to support its claims or defenses, as well as the subject of the information known by the individuals. Fed.R.Civ.P. 26(a). Rule 37 gives teeth to that requirement, providing in relevant part that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." R & R Sails, Inc. v. Ins. Co. of Penn., 673 F.3d 1240, 1246 (9th Cir.2012).

Although Frazier's name appears to have come up only once in the documents produced by plaintiff (albeit her maiden name), (Mot. to Strike at 4:5–6), she was repeatedly mentioned in the various depositions of other witnesses when discussing plaintiff's contention that a nurse had intentionally harmed Frazier's mother. For example, plaintiff stated during her deposition that she "spoke with the patient and her daughter and they signed something saying that what Ms. Davis had put was incorrect." (Purtill Decl. in Opp'n to Mot. to Strike Ex. A at 150:3–5; see id. at 135:20–136:8, Ex. C at 328:1–25, Ex. D at 232:4–233:17 (Docket No. 102–1).) Plaintiff also referred to the incident involving Frazier's mother in her FAC as a basis of her defamation and intentional infliction of emotional distress claims. (See FAC ¶¶ 144, 156).

■■ Plaintiff represents that her failure to disclose Frazier as a potential witness was an honest mistake. (Purtill Decl. in Opp'n to Mot. to Strike ¶ 8 (Docket No. 102–1).) The court has no reason to doubt that representation. Nevertheless, the court cannot find that her failure to do so was harmless. Parties, aware of the "self-executing" and "automatic" nature of Rule 37(c)(1) sanctions, have a right to expect that only disclosed witnesses will be used to support the disclosing party's claims and defenses. Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir.2001) (citing Fed.R.Civ.P. 37 advisory committee's note (1993)). They should be able to rely on Rule 26 disclosures and not be required to second guess whether a disclosing party has purposefully omitted a potential witness or done so accidently. Thus, even though Frazier had been referenced in the depositions of other witnesses, SGMF was not on sufficient notice that she possessed information that supported plaintiff's claims or defenses such that it could make an informed decision about whether to pursue discovery as to Frazier.

The district court has wide discretion to issue sanctions under Rule 37(c)(1). Yeti by Molly, Ltd., 259 F.3d at 1106; Fed. R.Civ.P. 37(c)(1)(C) (providing that, in ad-

dition to or instead of excluding a witness, the court "may impose other appropriate sanctions"). It is this court's practice not to decide motions on procedural technicalities when defects can be remedied by other, less drastic sanctions, such as permitting the opposing party to depose the previously undisclosed witness. The court will therefore deny SGMF's motion to strike on the condition that SGMF have an opportunity to depose Frazier, if it chooses to do so, at plaintiff's expense.

 Because Frazier's declaration bears only on SGMF's motion for summary judgment with respect to plaintiff's claims for intentional infliction of emotional distress and punitive damages,[8] it will be a sufficient remedy if SGMF is allowed to file an amended reply to plaintiff's opposition to its motion for summary judgment with respect to those two claims after being afforded the opportunity to take Frazier's deposition. The court will accordingly withhold ruling on those claims until SGMF has had the opportunity to exercise that option.

IT IS THEREFORE ORDERED that defendant SGMF's motion for summary judgment be, and the same hereby is, GRANTED as to claims four, five, seven, eight, and nine;

IT IS FURTHER ORDERED that plaintiff's tenth claim for defamation be, and the same hereby is, DISMISSED with prejudice as to SGMF;

AND IT IS FURTHER ORDERED that SGMF's motion to strike the declaration of Carol Frazier be, and the same hereby is, DENIED, on the condition that within twenty days of this Order, plaintiff shall make available witness Frazier and bear the costs for SGMF to depose her and receive transcripts of the deposition. Within fourteen days after completion of the deposition, SGMF may file an amended reply to plaintiff's opposition to SGMF's motion for summary judgment with respect to plaintiff's claims for intentional infliction of emotional distress and punitive damages. If SGMF elects not to depose Frazier, it shall so inform the court within twenty days of this Order, and the court will decide plaintiff's intentional infliction of emotional distress and punitive damages claims on the present record.

---

8. "In California there is no separate cause of action for punitive damages." *McLaughlin v. Nat'l Union Fire Ins. Co.,* 23 Cal.App.4th 1132, 1164, 29 Cal.Rptr.2d 559 (1994). To obtain punitive damages, a plaintiff must first prove that there was a tortious act that gave rise to actual, presumed, or nominal damages. *Id.* Because plaintiff's claim for punitive damages will depend upon whether she may proceed with her intentional infliction of emotional distress claim, the court will decide the motion for summary judgment on plaintiff's punitive damages claim along with the motion on her intentional infliction of emotional distress claim.